## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:20-cr-00033 |
| | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| | : | |
| RYAN COGGINS, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM
May 7, 2020

## I.  Introduction.

Currently pending is Defendant Ryan Coggins' motion for pretrial release.

Coggins seeks release under 18 U.S.C. § 3142(i), which provides that the court may

temporarily release a defendant in pretrial detention when such release is necessary

for preparation of the defendant's defense or for another compelling reason.

Coggins contends that the current COVID-19 pandemic is a compelling reason for

his release.  He also suggests that release is necessary for preparation of his defense.

For the reasons that follow, we will deny Coggins' motion.

## II.  Background and Procedural History.

On February 5, 2020, the Grand Jury returned an indictment charging

Coggins with conspiracy to commit possession with intent to deliver 500 grams or

more of methamphetamine in violation of 21 U.S.C. § 841 (Count 1), possession

with intent to distribute 500 grams or more of methamphetamine in violation of 21

U.S.C. § 841(a) (Counts 4, 8), possession with intent to distribute 50 grams or

more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Counts 7, 10),

and maintaining a drug premises in violation of 21 U.S.C. § 856(a). *Doc. 1.*

On February 11, 2020, Coggins appeared before the undersigned for an

initial appearance and arraignment.  Counsel was appointed to represent him, and

Coggins pleaded not guilty. *Docs. 41, 44.*  The United States moved to detain

Coggins. *Doc. 47.*  The probation office prepared a pretrial services report, which

disclosed that Coggins has a lengthy criminal history, two active county probation

detainers, and that the instant alleged offenses were committed while he was on

county supervision.

Following a detention hearing, we found that there is probable cause to

believe that Coggins committed an offense for which the maximum prison term is

ten years or more as prescribed in 21 U.S.C. § 801 *et seq. Doc. 50* at 1.  Based on

that finding, a rebuttable presumption arose that "no condition or combination of

conditions will reasonably assure the appearance of [Coggins] as required and the

safety of the community." 18 U.S.C.A. § 3142(e)(3)(A).  Coggins did not rebut

that presumption, and we detained him. *Doc. 50* at 2.  Coggins' trial is currently

scheduled for August 3, 2020. *Doc. 113*.

On April 20, 2020, Coggins filed a motion for pretrial release (*doc. 104*) and a brief in support of that motion (*doc. 105*).  He contends that the Cumberland County Prison does not have the resources necessary to screen and test inmates, staff, and others who enter the facility for COVID-19 and to protect him from COVID-19.  He also suggests that restrictions on attorney-client visits will impair his ability to present a defense.  Coggins contends that if released, he will live in Spring City with his parents Harry and Mary Elizabeth Coggins; Harry Coggins will act as a third-party custodian.  He also asserts that he will submit to home confinement with location monitoring.

On April 22, 2020, the United States filed a brief in opposition to Coggins' motion for pretrial release.  The United States contends that Coggins remains a risk and a danger to the community, that COVID-19 does not provide a compelling reason to release Coggins, and that if the court does release Coggins, such release should be under conditions, including a health screening.

In accordance with the standard procedures that the court implemented to address these types of release motions, on April 20, 2020, a text order was issued directing that after the parties confer, the defendant shall file a notice that, among other things, states "whether the parties believe an in-court hearing is necessary to decide the motion and/or to determine the suitability of a third-party custodian." (Apr. 20, 2020 Docket Entry-Text Order).

## III. Discussion.

### A. 18 U.S.C. § 3142(i).

Coggins seeks release under 18 U.S.C. § 3142(i).[1]   Section 3142 concerns release or detention of a defendant pending trial, and after setting forth what a detention order must contain, 18 U.S.C. § 3142(i) provides:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

---

[1] Recently, the question of whether COVID-19 warrants release has arisen in several different contexts in addition to pretrial release.  One such context is release of immigration detainees via a temporary restraining order in a habeas corpus case. *See e.g., Thakker, v. Doll*, No. 1:20-CV-480, 2020 WL 1671563, at *9 (M.D. Pa. Mar. 31, 2020) (granting temporary restraining order and ordering the release of numerous immigration detainees with serious medical conditions from the York County Prison, the Clinton County Correctional Facility, and the Pike County Correctional Facility).  In his brief in support of his motion, Coggins concludes his argument for release by quoting Judge Jones's decision in *Thakker*.  *Thakker*, however, concerned civil detention pending removal, not detention pending a criminal trial.  Further, here, we have previously determined that no condition or combination of conditions will assure the presence of Coggins at trial and the safety of the community, concerns that were not at issue in *Thakker*.  For these reasons, *Thakker* is distinguishable from this case. *See United States v. McIntyre*, No. 19-cr-95, 2020 WL 1891837, at *5 n.3 (M.D. Pa. Apr. 16, 2020) (distinguishing *Thakker* on the basis that a motion under § 3142(i) is based on a  different statutory framework than in *Thakker* and on the basis that "compelling public safety considerations inspired by our finding that this defendant presented a danger to the community were completely absent in *Thakker*").

The defendant bears the burden of showing that he is entitled to release under § 3142(i). *United States v. Cox*, No. 2:19-cr-00271-RFB-VCF, 2020 WL 1491180, at *2 (D. Nev. Mar. 27, 2020).

### 1. Under the circumstance of this case, the COVID-19 pandemic is not a compelling reason for Coggins' release.

Although "[t]he Court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents, particularly within the jail and prison setting[,]" "a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation." *United States v. Boatwright*, No. 2:19-cr-00301-GMN-DJA, 2020 WL 1639855, at *5 (D. Nev. Apr. 2, 2020); *cf United States v. Raia*, ___ F.3d ___, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Roeder*, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020) (reversing district court's denial of defendant's motion to postpone his self-surrender date in light of the COVID-19 pandemic, but noting that "the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or

substantially delay reporting for that sentence," and stating that it is "imperative" that the courts "continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief").

Rather, "the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary." *Boatwright*, 2020 WL 1639855, at *5; *Cox*, 2020 WL 1491180, at *2 (stating that "whether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case"); *United States v. Croley*, No. 1:19-cr-0454 (TJM), 2020 WL 1696061, at *1 (N.D.N.Y. Apr. 6, 2020) ("While courts have recently used their authority to release a defendant during this dire period upon a showing that such defendant faces a particularized and heightened danger, or need, a generalized argument in favor of release because of the ongoing pandemic is insufficient.").

In determining whether a defendant should be released under § 3142(i) in light of the COVID-19 pandemic, many courts have analyzed the following factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan.

Mar. 25, 2020); *see also Boatwright*, 2020 WL 1639855, at *5 (relying on *Clark* and

analyzing those same factors); *United States v. Dodd*, No. 20-cr-0016 (NEB/HB),

2020 WL 1547419, at *3 (D. Minn. Apr. 1, 2020) (same).  Magistrate judges in this

district have also found the *Clark* factors helpful. *See e.g., United States v.

Andrewsh,* No. 5:19-mj-00087, 2020 WL 1904473, at *4 (M.D. Pa. Apr. 17, 2020)

(Saporito, M.J.); *McIntyre*, 2020 WL 1891837, at *4 (Carlson, M.J.); *United States

v. Neal*, No. 4:17-cr-255-1, 2020 WL 1891874, at *3 (M.D. Pa. Apr. 16, 2020)

(Arbuckle, M.J.); *United States v. Veras*, No. 3:19-cr-010, 2020 WL 1675975, at *6

(M.D. Pa. Apr. 6, 2020) (Mehalchick, M.J.).

More recently, a modified set of factors, which explicitly includes the actual

conditions in the facility where the defendant is being held, has been used by the

United Stated District Court of the Eastern District of Michigan. *See United States

v. McGlory*, No. 2:17-CR-20489, 2020 WL 1905719, at *2 (E.D. Mich. Apr. 17,

2020).  Those factors are:

> (1) the nature, seriousness, and specificity of the defendant's stated COVID-19 concerns (e.g., underlying medical conditions, age, etc.);
> (2) the conditions in the facility where the defendant is being held (e.g., social distancing measures, screening protocols for new prisoners, the number of prisoners diagnosed with COVID-19, and availability of appropriate medical treatment);

(3) whether conditions of release can be imposed to mitigate COVID-19 risks to the defendant and to the community;

(4) the original grounds for the defendant's pretrial detention.

*Id.* Mindful that all the circumstances of a particular case must be analyzed, we conclude that the above factors, although not the exclusive factors that may be relevant in any given case, are a helpful starting point in analyzing whether release is warranted under § 3142(i).

Here, after weighing the above factors and considering the arguments presented by the parties, we conclude that release is not warranted in this case.

### a. The nature, seriousness, and specificity of Coggins' stated COVID-19 concerns.

Coggins' COVID-19 concerns are general and speculative. "Compelling reasons may exist [for release] where the defendant's serious medical conditions warrant release." *United States v. Marte*, No. 19-cr-795 (SHS), 2020 WL 1505565, at *1 (S.D.N.Y. Mar. 30, 2020). But Coggins, who is in his thirties, does not contend that he has COVID-19 or symptoms consistent with COVID-19. Nor does he contend that he has a medical condition that places him at a heightened risk of suffering severe illness or death from COVID-19. Thus, Coggins' personal circumstances do not point in favor of release.

### b. The conditions at the Cumberland County Prison.

Coggins is concerned that he is in danger of contracting COVID-19 at the Cumberland County Prison. His concern is not without a basis:

> According to Pennsylvania's Department of Health, a primary strategy for minimizing the spread of COVID-19 is "social distancing." This means avoiding large gatherings of people and keeping at least six feet away from other individuals. It goes without saying that prisons generally are crowded spaces and therefore are less than conducive to the practice of social distancing. During this rapidly evolving public health emergency, there are many valid concerns about the possibility of contagion in prisons.

*Roeder*, 2020 WL 1545872, at *2 (footnotes omitted). But Coggins has not proffered any evidence regarding: the specific conditions under which he is detained at the Cumberland County Prison; whether he has come into contact with anyone at the Cumberland County Prison with COVID-19 or symptoms consistent with COVID-19; what precautions are being taken to attempt to keep COVID-19 out of the prison; or what plans or procedures are in place to address any cases that are detected and to slow or stop the spread of the virus at the prison. On the other hand, the United

States points out that there are no known positive cases of COVID-19 at the Cumberland County Prison.[2] *Doc. 110* at 15.

### c. Whether Conditions of Release Can be Imposed to Mitigate COVID-19 risks to Coggins and to the Community.

Because Coggins contends that the risk of contracting COVID-19 in the Cumberland County Prison is a compelling reason necessitating his temporary release, his "proposed temporary release plan should be tailored to mitigate [his] overall COVID-19 risks, not exacerbate them." *Clark*, 2020 WL 1446895, at *6. "Releasing someone from jail will distance him or her from the people in the jail." *United States v. Hamlin*, No. 17-cr-175-PP, 2020 WL 1703848, at *6 (E.D. Wis. Apr. 8, 2020). But "[i]t will not guarantee that he or she is distanced from people outside the jail upon release." *Id*.

It is reasonable to assume that, if Coggins lives in a home with his parents, as he proposes to do, he will be exposed to fewer individuals (and therefore fewer individuals who may have COVID-19) than he would if he remained in the

---

[2] This assertion is consistent with the reports the court is receiving from the Marshal in accordance with Standing Order No. 20-5 (Mar. 23, 2020) (ordering each detention center with pretrial detainees from this district to "promptly notify the Marshal for this District of any federal detainee who is in medical isolation or quarantine at their facility for any reason, promptly upon the entry of such detainee into such status" and for the Marshal to then notify the Chief Judge and "the judicial officer who entered the Order of commitment of such status").

Cumberland County Prison.  Nevertheless, Coggins' risk of contracting COVID-19 outside the prison is tied to his compliance with the social-distancing and stay-at-home measures meant to slow the spread of the virus.  And Coggins' "extensive criminal history establishes that he has 'been unable or unwilling to remain law-abiding for most of his adult life;' hence, the Court 'has no reason to believe that he would suddenly become compliant now.'" *United States v. Smoot*, No. 2:19-cr-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020) (quoting *Clark*, 2020 WL 1446895, at *7).  Thus, Coggins' lengthy criminal history casts doubt on whether he will comply with social-distancing and stay-at-home measures.  And if he does not comply with such measures, he would be at risk of contracting and then spreading the virus.  Further, "[a] defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties." *Veras*, 2020 WL 1675975, at *6.

Although Coggins asserts that he is willing to be subject to electronic monitoring, it is not clear that electronic monitoring is a viable option in this case. The court understands from the probation office that location monitoring devices are in short supply. *See also United States v Kahn*, No. 19-80169-CR, 2020 WL 1582279, at *7 (S.D. Fla. Apr. 2, 2020) ("Probation Officer Grice noted the shortage of electronic location monitoring devices."); *United States v. Feliciano*, No. 1:19-

cr-00255-TWP-MJD, 2020 WL 1599693, at *2 (S.D. Ind. Apr. 1, 2020) ("The

COVID-19 pandemic has reduced the availability of pretrial supervision conditions

to mitigate the risk to the community and the resources of the United States

Probation Office are presently limited. The number of officers available to provide

supervision and the availability of GPS and other home detention equipment is

strained. The Probation Office's limited resources should be reserved for the release

of those in pretrial detainment whose circumstances have truly changed—such as

those who are elderly or at high risk for the virus.").

Moreover, setting up electronic monitoring entails risks to the probation staff.

*See United States v. Aiad-Toss,* No. 4:19-cr-00521, 2020 WL 1514482, at *2 (N.D.

Ohio Mar. 30, 2020) ("Moreover, releasing Defendant to home detention and

electronic monitoring creates its own risks and undue burden on pretrial services.

Location monitoring is not a limitless resource, nor is its installation and monitoring

by United States Pretrial Services officers without risk to those personnel (who must

be trained and certified to install location monitoring) given the current

recommendations regarding implementation of social distancing."). "The fact that

a probation officer might be at risk in effectuating a defendant's release on location

monitoring may not, standing alone, be a reason not to release a defendant." *Hamlin*,

2020 WL 1703848, at *7. "But in a situation in which the defendant presents both

a risk of non-appearance and a danger to the community, and where that defendant

is not at significantly higher risk for severe illness if infected, and where the

defendant's release plan is short on details, the court must include in the balance of

factors whether the risk to the probation officer is warranted." *Id*.

### d.  The original grounds for Coggins' pretrial detention.

As set forth above, Coggins has a long criminal history, and we previously

determined that he failed to rebut the presumption that "no condition or combination

of conditions will reasonably assure the appearance of [Coggins] as required and the

safety of the community." 18 U.S.C.A. § 3142(e)(3)(A).  The COVID-19 pandemic

does not change any of that.  Although Coggins asserts that he is in danger given the

pandemic if he remains incarcerated, such a danger generally does not bear on

whether if released, he would be a flight risk or a danger to the community. *Cf. Clark*,

2020 WL 1446895, at *3 ("A defendant's concerns that he or she would face

heightened COVID-19 risks if incarcerated would not typically factor into a

§ 3142(f) analysis, which focuses on whether the court can fashion conditions of

release that will reasonably assure the defendant is not a risk of nonappearance or a

risk of harm to any others or the community.  The risk of harm *to the defendant* does

not usually bear on this analysis." (italics in original)).  And we cannot say that

Coggins is not a flight risk and a danger to the community given the offenses with

which he is charged and his criminal history.

Further, although Coggins asserts that he is willing to submit to home confinement with location monitoring, such monitoring, assuming it is available, "may offer useful information about where he is, [but] it provides little useful information about what he is doing, and the ready accessibility of smart phones and digital communication devices would make it all too easy for him to resume his involvement (directly or through confederates) in the distribution of controlled substances without detection." *United States v. Martin*, No. CR PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020).

COVID-19 poses a threat to all members of society, including Coggins. "And the Court is sensitive to the special risks that COVID-19 poses to incarcerated persons." *United States v. Wilson*, No. 19-cr-20112-7, 2020 WL 1543547, at *3 (E.D. Mich. Mar. 26, 2020). "In an appropriate case, the circumstances of the COVID-19 pandemic, and the pandemic's impact on a particular prisoner in a particular facility, could perhaps tip the balance in favor of pretrial release." *Id*. But Coggins has not shown that under the circumstances he faces, the COVID-19 pandemic is a compelling reason for his release.

**2. Coggins' release is not necessary for the preparation of his defense.**

14

Coggins also suggests that his release is necessary for the preparation of his defense. "But there is nothing unique about his situation—as opposed to all detained defendants who must assist in their defense within the limits of pretrial custody—that would make temporary release for trial preparations 'necessary' here." *Villegas*, 2020 WL 1649520, at \*2. "If federal courts had to order temporary release just because it would aid a defendant's ability to work with counsel, the exception in section 3142(i) would swallow all detention orders." *Id*. Temporary release is not warranted "just because it would be helpful, preferable, or even ideal for a defendant's trial preparations." *Id*. "At a minimum, detained defendants seeking temporary release under section 3142(i) for 'necessary' trial preparations must show why less drastic measures—such as requests to continue the trial date (consistent with the Speedy Trial Act) or alternative means of communication (including in writing or by available remote conferences)—would be inadequate for their specific defense needs." *Id.*

Here, Coggins has not shown that his release is necessary for the preparation of his defense. Coggins has not shown that the Cumberland County Prison does not allow attorney-client visits by teleconference or phone. And "the court is confident that the [prison] will respect the privileged nature of the communications between attorneys and their clients as nothing to the contrary has been brought to our attention

to cause us concern." *United States v. Mendoza*, 2020 WL 1663361, at *3 (M.D. Pa. Apr. 3, 2020).

In sum, Coggins has not shown that the COVID-19 pandemic is a compelling reason for his release or that his release is necessary for the preparation of his defense.

## IV. Order.

Based on the foregoing, Coggins' motion for pretrial release (*doc. 104*) is **DENIED**. An appropriate order will follow.


*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge